UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. THATCHER,

       Plaintiff,                    CIVIL ACTION NO. 12-10288

vs.

                                     DISTRICT JUDGE MARK A. GOLDSMITH

COMMISSIONER OF             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 12) be granted, Defendant's motion for summary judgment (docket no. 13) be denied, and the instant case be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits in August 2007, alleging disability beginning February 16, 2006. (TR 101-03). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On January 7, 2010 Plaintiff appeared with counsel in Oak Park, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Paul R. Armstrong, who presided over the hearing from Chicago, Illinois. (TR 14-38). Vocational Expert (VE) Harry Cynowa also appeared and testified at the hearing. In a January 26, 2010 decision the ALJ issued a partially favorable decision, finding that Plaintiff was disabled for a closed period from February 16, 2006 through October 30,

2008 as a result of a left shoulder impairment that met listing 1.08. (TR 45-56). The ALJ further found that Plaintiff was no longer disabled under the Social Security Act because there was an improvement of his medical impairment after October 30, 2008, after which time he was capable of performing a significant number of jobs in the national economy. The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III. PLAINTIFF'S TESTIMONY, ADULT FUNCTION REPORT, AND MEDICAL EVIDENCE
#### A. Plaintiff's Testimony and Adult Function Report

Plaintiff was forty-six years old on October 31, 2008, the date his disability allegedly ended. He completed two years of college in Business Administration. (TR 20, 131). Plaintiff lives in a house with his wife and two minor children. (TR 138). He owned and operated a construction and landscape business. (TR 27). He reportedly injured his left shoulder on February 23, 2006 when he fell off a ladder at work. (TR 126, 193).

Plaintiff testified that he is unable to raise his left arm above chest level and he has numbness in his left hand. (TR 17). He claimed that he had surgery in 2008 that made his condition worse. Plaintiff testified that he has a difficult time sitting and he can only sleep for two to four hours each night. (TR 18, 21). He testified that he has trouble concentrating because of sleep deprivation. Plaintiff testified that he has had five pain pumps during his medical treatment, but he was taking oral pain medications in the form of Oxycontin and Oxycodone at the time of the administrative hearing. (TR 23).

Plaintiff stated that he can sustain attention for only ten minutes at a time. (TR 26). He also stated that his short term memory is poor. He estimated that he can pay attention to a television

show for approximately thirty minutes at a time if he has the ability to adjust his position and sit and stand as needed. Plaintiff testified that he can sit for fifteen minutes before he needs to stand up, stand for an hour before needing to sit, and walk around the block at home with his son. (TR 27-28). He stated that he can lie down for a few hours at a time and he generally lies down every few hours during the day for up to a few hours at a time. (TR 29).

Plaintiff's adult function report states that he helps get his school-age child ready for school and he cares for his two-year-old son during the day. (TR 138-39). He reported that he can bathe, feed himself, and care for his personal needs without a problem, but he claimed to have difficulty putting on belts, socks, shirts, and shoes. (TR 139). He stated that he is able to prepare complete meals and he does so on a daily basis. (TR 140). Plaintiff stated that he shops for food and clothing two times a week and he pays bills, counts change, handles a savings account, and uses a checkbook. (TR 141). He attends church and spends time socializing with others several times a week. (TR 142). Plaintiff reported that he follows spoken instructions, gets along well with authority figures, handles stress, and handles changes in his routine very well. (TR 143-44).

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below. On May 17, 2006 Plaintiff underwent a diagnostic arthroscopy of the left shoulder with arthroscopic repair of the superior labrum anterior/posterior tear and repair of the anterior/inferior labrum. (TR 193, 223). On August 1, 2006, after he failed to make progress in physical therapy, he underwent a second arthroscopic procedure on his left shoulder with release of adhesive capsulitis, SLAP repair and manipulation. (TR 183-86, 193). Plaintiff had pain pumps inserted during the first and second procedures. His post-operative diagnosis after the second

3

procedure was adhesive capsulitis of the left shoulder with status post repair of the anterior labrum. (TR 183-86). On August 16, 2006, he had an MRI of the left scapula that showed no significant abnormality. (TR 210). Plaintiff underwent a third arthroscopic exam and repair of the anterior and posterior labral tear on December 5, 2006 after an MRI showed post-surgical changes in the left shoulder. (TR 229, 267). During the procedure the surgeon placed a pain pump into the subacromial space.

Imaging tests taken in June 2007 revealed mild AC joint arthrosis, post-operative changes of the glenoid labrum, extensive post-operative changes of the glenoid with extensive re-tear, and mild glenohumeral synovitis. (TR 262). On September 7, 2007 Plaintiff was examined by Dr. Paul Siatczynski. (TR 250). On physical examination the doctor noted that Plaintiff's active motion was ninety degrees which was "a definite step back," and his passive arm raise in a supine position was approximately one hundred fifty degrees. (TR 250). The doctor opined that Plaintiff may be a candidate for arthroscopic capsular release which would likely not make him whole but which may decrease his day-to-day pain. The doctor observed that another surgical procedure would likely not help him return to physical labor.

Jenny Farley completed a physical residual functional capacity assessment in December 2007. (TR 300-307). Ms. Farley opined that Plaintiff was able to occasionally lift and carry twenty pounds and frequently lift and carry ten pounds, stand/walk/or sit six hours in an eight hour workday, with unlimited push/pull activities. The examiner found that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and frequently crawl or climb ladders/ropes/or scaffolds. She found that Plaintiff was limited to no overhead reaching with the left upper extremity but he had no other manipulative limitations. She further found that Plaintiff had no visual,

4

communicative, or environmental limitations except that he should avoid even moderate exposure to vibration.

In May 2008, Dr. Steven Rimar examined Plaintiff and reported that he was extremely positive for thoracic outlet compression with minimal movement of the left arm. The doctor noted that although Plaintiff had been through another round of physical therapy he had continued problems with his left arm. Plaintiff opted to proceed with a first rib resection. (TR 347). The surgery took place on July 15, 2008. (TR 345-46).

On October 30, 2008 Dr. Steven Rimar observed that Plaintiff reported improved symptoms with coolness to the hand although he still had difficulty with his arm mobility and discomfort. (TR 336). On examination, the doctor noted that Plaintiff's range of motion of the left arm was severely limited due to his shoulder problems. He stated that Plaintiff did not have an ideal outcome after the first rib resection, indicated that there was very little he could offer Plaintiff by way of treatment, and scheduled an appointment for Plaintiff with pain therapy.

On September 13, 2011 Dr. Nalia Ahmad completed a physical capacities evaluation. (TR 357-59). Dr. Ahmad stated that Plaintiff could sit, stand, and walk less than one to two hours at a time and less than one to two hours total during an eight hour workday. He could occasionally lift up to twenty pounds but never more. He could not perform simple grasping, push/pull activities, or fine manipulation with the left arm. He would need to rest frequently without restriction in order to relieve pain. The doctor opined that Plaintiff did not need to elevate his legs with prolonged sitting, yet he also stated that Plaintiff's legs should be elevated for one to two hours if performing sedentary work.

Plaintiff was treated at Oakland Psychological Clinic from January 21, 2008 through

September 10, 2009. (TR 310-35). Plaintiff initially presented with complaints of anxiety and depression caused by his inability to work or engage in physical activity. (TR 329). Betty Jo Rose, a limited licensed psychologist, noted that Plaintiff's speech and affect were normal, his thought process was lucid with normal content, his memory was intact, he was fully oriented, although he appeared depressed, anxious, and agitated. (TR 331). Ms. Rose noted that Plaintiff was not sleeping well and his depression was causing an impairment in his judgment and insight. She diagnosed Plaintiff with major depression and assigned a GAF of 65. Plaintiff was treated approximately twelve times between February 20, 2008 and September 10, 2009, and at each session he presented with varying complaints of depression, agitation, insomnia, inability to cope with his pain, poor memory, and poor concentration. (TR 310-28).

On April 15, 2008 Dr. Yariagadda Prasad completed a psychological medical report and psychiatric assessment. (TR 318-24). The doctor noted that Plaintiff was clean, neat, able to dress himself, he drove himself to the appointment, and he was able to follow directions from On-Star to get to the appointment on time. Dr. Prasad stated that Plaintiff was very tense and needed to change positions frequently during the assessment on account of pain. He indicated that Plaintiff would be talking about something and forget what he was saying. He indicated that Plaintiff was very depressed and stressed over having new surgery and he was "totally incompetent to work or do anything physically or mentally." (TR 320). Plaintiff reported that he had lost all of his friends and he was no longer socially active. Dr. Prasad noted that Plaintiff could recall three numbers forward and one backward, recall one of three objects after a three minute delay, name three past Presidents and five large cities, perform serial sevens to seventy-two and perform simple calculations. Plaintiff was diagnosed with major depression and assigned a GAF of 40. The psychiatric assessment shows

6

that Plaintiff was cooperative, his speech was coherent, his affect appropriate, his thought processes logical and content appropriate, his memory and insight fair, and his attention/concentration impaired. (TR 323).

Dr. Prasad completed a mental capacities evaluation in September 2009. (TR 350-55). Dr. Prasad found that Plaintiff was severely limited in maintaining social functions, maintaining concentration, persistence, or pace, sustaining concentration and attention to task, and responding appropriately to work situations, changes in routine work situations, and to the stress of customary work pressures in the work environment. The doctor opined that Plaintiff was moderately limited in (1) activities of daily living, (2) understanding, carrying out, and remembering simple instructions and performing simple tasks, (3) independently performing routine repetitive tasks, (4) using judgment, (5) achieving goals and responding to time limits, (6) performing work requiring regular contact with others, (7) relating appropriately to supervisors, co-workers, and the public, (8) maintaining socially appropriate behavior and adherence to basic standards of neatness and cleanliness, (9) maintaining production standards, (10) making simple work-related decisions, (11) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, and (12) responding appropriately to supervision. The doctor noted that Plaintiff had no episodes of decompensation. Dr. Prasad diagnosed Plaintiff with major depression and panic disorder with agoraphobia. He documented that Plaintiff's prognosis was poor. Finally, Dr. Prasad circled the following depressive symptoms indicating that he had an affective disorder: (a) anhedonia or pervasive loss of interest in almost all activities, (b) appetite disturbance with change in weight, (c) sleep disturbance, (d) psychomotor agitation or retardation, (e) decreased energy, (f) feelings of guilt or worthlessness, and (g) difficulty concentrating or thinking. (TR 354).

### IV.     VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past work as a construction/landscape laborer was classified as semiskilled work at a heavy exertional level. (TR 32). The ALJ asked the VE to testify whether jobs were available for an individual who was limited to light exertional work, meaning he could stand and walk six hours in an eight hour workday, lift up to twenty pounds with his right arm, use his left arm only as a guide and not above the waist, perform occasional fine finger manipulation with the left arm only in front of him, require a bench in front of him, with no overhead reaching, no work at unprotected heights or around dangerous machinery, and no limitations of the right upper extremity. (TR 32-33).

The VE testified that the hypothetical individual could not perform Plaintiff's past work, but could perform unskilled work at both the light and sedentary exertional level such as visual inspector checker, hand packager, and information clerk or lobby clerk positions, comprising approximately 6,000 jobs in Southeastern Michigan. (TR 33). The VE testified that the same jobs would be available to an individual who was limited to simple unskilled work with a specific vocational preparation (SVP) code of 1 or 2. The VE testified that if the individual was limited by pain, sleep deprivation, medication side effects, and reactive depression such that he would be unable to concentrate on simple, unskilled work for more than fifteen minutes out of every hour, he would be precluded from competitive employment. (TR 34). The VE further testified that if the individual had to lie down for at least an hour during the workday at irregular intervals he would not be able to engage in competitive employment.

### V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged

onset date of February 16, 2006, and he suffers from the severe impairments of depression and left shoulder arthritis, status post February 2006 injury and four surgeries. The ALJ concluded that Plaintiff was disabled within the meaning of the Social Security Act for a closed period from February 16, 2006 through October 30, 2008 because the severity of his shoulder injury met the criteria of listing 1.08 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)). (TR 45-50). He found that continuing surgical management of Plaintiff's shoulder impairment ended and the maximum therapeutic benefit was reached as of October 30, 2008, the date Plaintiff's disability allegedly ended, and that after that date Plaintiff no longer had an impairment or combination of impairments that met or medically equals one of the listed impairments. (TR 50-51). The ALJ found that beginning on October 31, 2008 medical improvement occurred that was related to Plaintiff's ability to work such that Plaintiff has been able to perform substantial gainful activity from that date through the date of the ALJ's decision.

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform simple, unskilled, light work with no overhead work with the left, non-dominant arm, no lifting of the left arm above the waist, occasional fine finger manipulations with the left hand, and no work at unprotected heights, around dangerous moving machinery, open flames or bodies of water. (TR 51-54). The ALJ concluded that because Plaintiff has not been capable of performing his past relevant work as a construction and landscaping laborer since October 31, 2008, but after that date he could perform jobs that exist in significant numbers in the national economy, Plaintiff has not been under a disability as defined in the Social Security Act as of October 31, 2008. (TR 54-56).

**VI.    LAW AND ANALYSIS**

**A.    Standard Of Review**

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed

disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted)

If the plaintiff is found disabled at any point in the process, the ALJ must determine if his disability continues through the date of the decision. In making this determination, the ALJ must follow the eight-step evaluation process outlined in 20 C.F.R. § 404.1594(f)(1)-(8).

**C.    Analysis**

Plaintiff argues that the ALJ failed to attribute proper weight to the September 2009 opinion of treating psychiatrist Dr. Prasad, and failed to account for Plaintiff's moderate restrictions in concentration, persistence, or pace in the RFC and hypothetical questions to the VE.

*1.    Treating Physician Rule*

Plaintiff lists a host of errors committed by the ALJ in evaluating Dr. Prasad's September 2009 opinion. Plaintiff argues that Dr. Prasad found in his September 2009 mental capacities evaluation that Plaintiff had thirteen moderately severe and five severe limitations of his ability to perform the mental demands of work. Plaintiff claims that these assessments constituted eighteen separate opinions of Dr. Prasad that the ALJ should have individually evaluated. Plaintiff contends that the ALJ erred in vaguely attributing only limited weight to these eighteen opinions and in

11

treating the opinions as if they were one opinion. He also claims that because the RFC was inconsistent with all eighteen of Dr. Prasad's opinions, the ALJ in fact gave no weight to Dr. Prasad's opinions. He argues that the ALJ did not identify any medical opinion that contradicted Dr. Prasad's opinion. He also contends that the ALJ discussed the opinion of Betty Jo Rose and identified her as a psychologist without recognizing that she was not an acceptable medical source. Finally, Plaintiff argues that the ALJ applied the wrong standard and rejected Dr. Prasad's opinion as "not fully consistent with the record as a whole."

It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

The ALJ first addressed Dr. Prasad's opinions by noting that he was a treating psychiatrist. (TR 51, 53). He also noted that Plaintiff began treating with Dr. Prasad in January 2008 with complaints of depression, anxiety, and insomnia. (TR 53). The ALJ discussed Plaintiff's mental health treatment records, noting that he generally presented for treatment with complaints of continuing depression and anxiety. He noted that despite Plaintiff's mental status, he was described

12

as having normal speech and affect, lucid and coherent thought processes, normal thought content, an intact memory, and he remained capable of performing household chores and cooking. The ALJ found that Dr. Prasad's medical source statement of September 2009 was not well-supported by medically acceptable clinical diagnostic techniques and was inconsistent with what he considered were relatively benign mental status examinations of January and April 2008. The ALJ assigned only limited weight to the opinion because it was not well-supported or well-explained and it was not "fully consistent with the record as a whole." (TR 53).

The undersigned agrees with Plaintiff that the ALJ cited the wrong standard in his evaluation of the treating source opinion. The Sixth Circuit requires the ALJ to give controlling weight to the opinion of a treating source if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record. *Wilson v. Comm'r*, 378 F.3d at 544. The more consistent a treating source opinion is with the record as a whole, the more weight that will be given to the opinion if it is not assigned controlling weight. 20 C.F.R. § 404.1527(c)(4). There is no requirement that a treating source opinion be *fully* consistent *with the record as a whole*.

The ALJ concluded that Dr. Prasad's opinion was not well-supported by clinical and diagnostic techniques and not supported by what he considered were relatively benign mental status examinations. In reaching this conclusion the ALJ discussed the medical opinion of Betty Jo Rose and identified her as a treating psychologist. However, the ALJ did not make it clear that he recognized that Betty Jo Rose was a limited licensed psychologist and thus not an acceptable medical source under 20 C.F.R. § 404.1513(a). The ALJ also did not make it sufficiently clear why he considered the mental status evaluations benign. The record shows that Plaintiff was treated from

13

January 21, 2008 through September 10, 2009 at Oakland Psychological Clinic, during which time he consistently presented with complaints of depression, agitation, insomnia, inability to cope with his pain, poor memory, and poor concentration. The ALJ noted that Plaintiff was prescribed Zoloft and Wellbutrin to treat his depression. Despite his ongoing treatment and medication the record does not show that Plaintiff experienced any improvement in his depression or complaints of poor memory and concentration over the course of his treatment.

In September 2009, Dr. Prasad determined that Plaintiff had thirteen moderately severe and five severe mental limitations. Dr. Prasad's opinion is the only mental status evaluation in the record that was performed by an acceptable medical source after Plaintiff's disability ended on October 31, 2008. Certainly there is no requirement that the ALJ discuss every piece of evidence in the administrative record or discuss each finding made by Dr. Prasad. *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (citation omitted). However, the ALJ concluded that Dr. Prasad's opinion was entitled to limited weight without analyzing the specifics of the doctor's findings. In doing so, the ALJ failed to adequately support his conclusion that the doctor's September 2009 opinion was not consistent with the evidence of record. As an example, Dr. Prasad found that Plaintiff was moderately limited in remembering simple instructions and maintaining production standards. These findings are not necessarily inconsistent with evidence showing that Plaintiff had poor concentration due to pain and insomnia, he would forget what he was saying while he was talking, he could recall only three numbers forward and one backward, and on his best estimate he could sustain concentration for only thirty minutes at a time when watching television. The ALJ cited to the fact that Plaintiff could concentrate on a television show for thirty minutes, but he did not provide any discussion as to how this translated into a finding that Plaintiff could sustain

14

concentration on a job for eight hours a day, five days a week, forty hours per workweek, even a job requiring only simple, unskilled work. The undersigned recognizes that the ALJ described Plaintiff as "laughing, talking, [and] friendly" at the administrative hearing. (TR 37). However this description may not provide a full picture as Plaintiff testified that he did not take his pain medication the day of the hearing because he wanted to be "coherent" for the questioning. (TR 26).

The ALJ cited the wrong standard when evaluating Dr. Prasad's opinion, failed to indicate that Betty Jo Rose was not an acceptable medical source, and gave only a cursory discussion of the limitations documented in Dr. Prasad's September 2009 opinion. All that considered, it is the undersigned's opinion that the ALJ failed to give good reason for assigning only limited weight to Dr. Prasad's opinion. The undersigned recommends that the Commissioner's finding be reversed and this matter be remanded under sentence four of 42 U.S.C. § 405(g) to allow the ALJ to re-evaluate and/or bolster his findings with regard to Dr. Prasad's September 2009 opinion as it relates to Plaintiff's depression and other mental symptoms.

*2.     Concentration, Persistence, or Pace*

Next, Plaintiff argues that the ALJ failed to account for Plaintiff's moderate deficits in concentration, persistence, or pace in the RFC and hypothetical questions he presented to the VE. The ALJ is required to present a hypothetical question that includes only those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The hypothetical must "accurately portray[] [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence. *Varley*, 820 F.2d at 779 (citations omitted). When the ALJ makes a finding that a claimant has moderate limitations with concentration, persistence or pace, "but does not specifically include that limitation in the

15

hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's ... limitations." *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). In other words, if the ALJ goes beyond the label a psychologist gives to a person in order " 'to develop a complete and accurate assessment' of the patient's mental impairment and possible work opportunities, a VE's reliance on that description is substantial evidence supporting a denial of benefits." *Adams v. Comm'r*, No. 10-10022, 2011 WL 63495, at *2 (E.D. Mich. Jan. 6, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001)).

Courts in this district have held that a moderate impairment in concentration, persistence or pace does not necessarily preclude a finding of simple, unskilled work. *Lewicki v. Comm'r*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010). On the other hand, a claimant with moderate deficits in concentration, persistence, or pace may be unable "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005). The court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision.

Here, the ALJ determined that Plaintiff had moderate restrictions in concentration, persistence, or pace, yet accounted for the mental limitations in the RFC and hypothetical question to the VE by requiring only simple, unskilled work. The ALJ offered no discussion as to what impact Plaintiff's mental deficits might have on his ability to sustain concentration, persistence, or pace on a job for eight hours a day, five days a week, forty hours per workweek, even on a job requiring only simple, unskilled work. The undersigned is not persuaded that the ALJ's RFC with regard to Plaintiff's mental limitations is supported by substantial evidence, or that the ALJ

presented a hypothetical question to the VE that accurately accounted for Plaintiff 's moderate deficits in concentration, persistence, or pace.

If this case is remanded pursuant to sentence four, the ALJ will reassess Dr. Prasad's opinion which may impact his conclusion as to whether Plaintiff's depression met listing 12.04 beginning on October 31, 2008, or whether his hypothetical questions and RFC accurately reflected Plaintiff's mental limitations. Even if the ALJ on remand determines that Dr. Prasad's opinion is not entitled to more than limited weight, the ALJ should provide some discussion as to whether Plaintiff requires additional limitations such as non-production work, work involving no quotas, or work involving only one to two step tasks to accommodate his moderate deficits in concentration, persistence or pace. Such additional limitations, if needed, may preclude Plaintiff from working as a visual inspector and hand packager.

### III.     Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: February 15, 2013				s/ Mona K. Majzoub
						MONA K. MAJZOUB
						UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: February 15, 2013				s/ Lisa C. Bartlett
						Case Manager